UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ROBERT EARL DAVIS,<br><br>Defendant. | Case No. 23-cr-00231-AMO-1<br><br>**ORDER DENYING MOTION TO SUPPRESS**<br><br>Re: Dkt. No. 59 |

Before the Court is Defendant Robert Earl Davis's motion to suppress. The Court held a hearing on the motion on February 26, 2024. Having carefully reviewed the parties' papers, the relevant legal authority, and the arguments advanced by counsel during the hearing on the matter, the Court DENIES the motion, for the reasons set forth below.

I.  **BACKGROUND**

By superseding indictment, Davis is charged with dealing firearms without a license in violation of 18 U.S.C. § 922(a)(1)(A), possession and shipment of a firearm by a felon in violation of 18 U.S.C. § 922(g)(1), and possession of a firearm by a felon in violation of 18 U.S.C. § 922(g)(1). ECF 55 at 1.

Davis moves to suppress evidence obtained from 6 search warrants. ECF 59. Davis refers to the warrants at issue as Instagram Search Warrant 2, State Instagram Search Warrant 3, State Telephone Search Warrant, Federal Telephone Search Warrant, Subject Premises Search Warrant, and Subject Parcels Search Warrant 1.[1] *Id.* at 8-9. For ease of reference, the Court adopts Davis's

---

[1] Davis was also the subject of two additional search warrants. One of those warrants – Instagram Search Warrant 1 – was issued but not executed. *See* ECF 59 at 8, 35. As to the other warrant –

1  labeling of the warrants at issue.  Further facts regarding each warrant are set forth below where
2  relevant to the Court's analysis.

## II.  LEGAL STANDARD

The Fourth Amendment prohibits "unreasonable searches and seizures," and provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized."  U.S. Const. amend IV (capitalization in original); *see United States v. Gourde*, 440 F.3d 1065, 1069 (9th Cir. 2006).

When determining whether probable cause exists, "[t]he task of the issuing magistrate is simply to make a practical, common-sense decision" that is, "whether, given all the circumstances set forth in the affidavit before [them], including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place."  *Illinois v. Gates*, 462 U.S. 213, 238-39 (1983); *see also Gourde*, 440 F.3d at 1069 ("[A] magistrate judge is only required to answer the 'commonsense, practical question whether there is "probable cause" to believe that contraband or evidence is located in a particular place' before issuing a search warrant.") (quoting *Gates*, 462 U.S. at 230). "A magistrate is entitled to draw reasonable inferences about where evidence is likely to be kept, based on the nature of the evidence and the type of offense."  *United States v. Angulo-Lopez*, 791 F.2d 1394, 1399 (9th Cir. 1986) (citations omitted).

"A court evaluating the constitutionality of a search conducted pursuant to a search warrant issued by a magistrate reviews the magistrate's probable cause determination for clear error."  *United States v. Nguyen*, 673 F.3d 1259, 1263 (9th Cir. 2012) (citation omitted).  On review, the duty of the court "is simply to ensure that the magistrate had a substantial basis for . . . conclud[ing] that probable cause existed."  *Gates*, 462 U.S. at 238-39 (internal quotations and citation omitted; modifications in original).  If "the magistrate had a substantial basis for . . .

---

Subject Parcels Search Warrant 2 – the government represents that it "will not seek to admit evidence obtained from [the warrant]."  ECF 64 at 36.  Instagram Search Warrant 1 and Subject Parcels Search Warrant 2 are thus not at issue here.

2

1  conclud[ing] that a search would uncover evidence of wrongdoing, the Fourth Amendment

2  requires no more." *Id.* at 236 (internal quotations and citation omitted; modifications in original).

3  The validity of the warrant is assessed "on the basis of the information that the officers disclosed,

4  or had a duty to discover and to disclose, to the issuing Magistrate." *Maryland v. Garrison*, 480

5  U.S. 79, 85 (1999).

6  **III.    DISCUSSION**

7  Davis attacks each warrant at issue on various grounds. Even if any of Davis's challenges

8  were meritorious, the good faith exception would save the resulting searches from a finding of

9  invalidity. The Court, therefore, addresses the good faith exception before turning to the merits of

10  each challenge Davis raises in the instant motion.

11  **A.    Good Faith Exception**

12  When a warrant lacks probable cause, evidence seized during its execution should

13  generally be suppressed under the exclusionary rule. *Mapp v. Ohio*, 367 U.S. 643, 655 (1961).

14  However, an exception to the exclusionary rule exists where an officer, in good faith, reasonably

15  relies on a defective search warrant. *United States v. Underwood*, 725 F.3d 1076, 1085 (9th Cir.

16  2013). The doctrine does not apply, however, where an affidavit is "'so lacking in indicia of

17  probable cause as to render official belief in its existence entirely unreasonable'" or "where

18  the warrant is 'so facially deficient – i.e., in failing to particularize the place to be searched or the

19  things to be seized – that the executing officers cannot reasonably presume it to be

20  valid.'" *Id.* (quoting *United States v. Leon*, 468 U.S. 897, 923 (1984)).

21  Here, the affidavits supporting the search warrants Davis challenges are not the type of

22  "bare bones" affidavits to which the good faith exception would not apply. *Cf., e.g.*, *Underwood*,

23  725 F.3d at 1086 (finding good faith exception did not apply where affidavit contained no facts to

24  support a conclusion that defendant was a drug trafficker). The Court thus ultimately finds that

25  the officers who executed the warrants Davis attacks did so in good faith, and that the evidence

26  should not be suppressed. With this in mind, the Court turns to whether Davis's specific

27  challenges to each warrant have merit, beginning with those he raises as to the Instagram Search

28  Warrants.

**B.** **The Instagram Search Warrants (Instagram Search Warrant 2 and State Instagram Warrant 3)**

Davis challenges the Instagram Search Warrants on three grounds. First, Davis contends that probable cause existed to search only for violations of illegal firearms possession, not firearms trafficking. ECF 59 at 35-36, 38. Second, Davis argues that the search warrants failed to describe the items to be searched with the required particularity. *Id.* at 36-37, 38. Third, Davis asserts that the warrants were overbroad. *Id.* at 37-39. The Court addresses each of these arguments in turn.

1. Probable Cause

Davis first argues that the Instagram Search Warrants were unsupported by probable cause as to alleged firearms trafficking.[2] ECF 59 at 36, 38. Because of this, Davis contends that there is no nexus between that crime and the evidence seized from the subject Instagram account, which included chat logs, "likes," "friends," IP addresses, and contacts. ECF 59 at 36-37, 38. The Court disagrees, as the affidavits offered in support of each warrant are sufficient to support each issuing Judge's finding of probable cause.

*a.* *Affidavit in support of Instagram Search Warrant 2*

The affidavit provided in support of Instagram Search Warrant 2, ECF 60-4 at 9-19, contains sufficient facts to support the Magistrate Judge's finding of probable cause to search the Instagram account in question for evidence of suspected firearms trafficking.

The affidavit of Andrew Balady,[3] a Special Agent of the United States Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"), describes Davis's criminal history. *Id.* at 14. Davis has multiple convictions for various offenses, including felony robbery, selling narcotics, felon in possession of a firearm, felony grand theft, and burglary. *Id.* at 16.

Special Agent Balady's affidavit also describes two stories from Davis's suspected Instagram account, one posted August 23, 2020, and one posted October 6, 2020. *Id.* at 14-16.

---

[2] Davis concedes that the Instagram Search Warrants were supported by probable cause of suspected illegal firearms possession. *See* ECF 59 at 35, 38.

[3] Davis concedes that Special Agent Balady's affidavit was incorporated into the warrant.

4

Multiple clips comprise the August 23, 2020 Instagram story.[4]  *Id.* at 14.  One clip shows a table full of various AK-type rifles and pistols, including three Glock pistol boxes.  *Id.*  Based on the way the firearms are displayed – on a table in an openly public place with a lot of background voices in the distance – Agent Balady described the clip as depicting a gun show.  *Id.*

The next clip shows the trunk of a vehicle loaded with nine Glock pistol boxes, a Smith & Wesson handgun box, and multiple high-capacity ammunition magazine boxes.  *Id.*  The following clip shows the cameraman, believed to be Davis, saying "2-7 with a 50 . . . this mutha's hella small . . . bounce out on a nigga," while holding a Glock Model 27 .40 S&W caliber pistol equipped with a 50-round drum magazine.  *Id.*  The pistol's barrel is zip-tied for safety purposes.  *Id.*  Based on Agent Balady's training and experience, he stated that this practice typically occurs at gun shows, "but not at Federal Firearms Licensees."  *Id.*[5]

Another clip shows a bedroom with gun boxes and pistols scattered throughout.  *Id.* at 14-15.  The room appears to be in an apartment or house.  *Id.* at 15.  An unknown male appears in the clip, holding two pistols with drum magazines and saying, "[w]e don't fuck with them ghost guns."  *Id.*  A man, believed to be Davis, then zooms in and opens three Glock pistol boxes, revealing the Glock pistols inside.  *Id.*  He says, "[b]ro these all Glocks . . . this ain't illegal.  I'm in Texas."  He moves the camera to display other Glock pistol boxes of various models, then turns the camera towards himself and an unidentified male in the room with him.  *Id.*  The unidentified male then points a firearm over the cameraman's shoulder, in the direction of the camera.  *Id.*

The October 6, 2020 Instagram story also consists of multiple clips.  *Id.*  The first clip shows a large cardboard box labeled with United States Postal Service stickers on the passenger seat of a black sedan.  *Id.*  The next clip shows the box opened and placed on the floor of a

---

[4] "Stories allow [an Instagram user] to share everyday moments . . . through photos and videos that disappear after 24 hours.  [The user] can choose to share [their] Stories with all [their] followers or [their] Close Friends list, and also add them to [their] profile as story highlights."  *See* Instagram Stories | About Instagram, https://about.instagram.com/features/stories (last visited Apr. 10, 2024).

[5] The Court does not consider Davis's attacks on Agent Balady's experience, which he raises for the first time in reply, ECF 70 at 7.  *See Bazuaye v. INS*, 79 F.3d 118, 120 (9th Cir. 1996) ("Issues raised for the first time in the reply brief are waived.").

1 carpeted room next to an AR-style pistol, a short-barreled AR-style rifle, and approximately 14
2 other guns. *Id.* The following clip shows a man, believed to be Davis, filming himself in the back
3 of an unknown vehicle with an unknown male. *Id.*

4       Based on these sworn facts, the Magistrate Judge had a substantial basis to conclude that
5 Davis was "not 'fucking with' ghost guns"[6] and would transport the real firearms in his possession
6 from Texas, where he was located, to California, where he is based. Specific statements and
7 scenes from the Instagram stories described in Special Agent Balady's affidavit indicated that
8 Davis was in Texas, showed him in possession of multiple firearms and firearm components, and
9 depicted him in proximity to means by which to transport those firearms, either by mail using the
10 labeled box in one of the videos or by other means such as the vehicle appearing in one of the
11 clips. Presented with this information, the Magistrate Judge did not err by finding probable cause
12 to allow the search the Instagram account[7] from which these stories originated for evidence of
13 suspected firearms trafficking.

14       Having found a substantial basis for concluding that probable cause existed to issue
15 Instagram Search Warrant 2, the Court now turns to whether such a basis existed for the issuance
16 of State Instagram Search Warrant 3.

17       ***b.    Affidavit in support of State Instagram Search Warrant 3***

18       The affidavit by Alameda County Sheriff's Deputy Ryan Swetavage, ECF 60-5, offered in
19 support of State Instagram Search Warrant 3, provides facts sufficient to support the issuing
20 Judge's finding of probable cause to search the Instagram account in question for evidence of
21 illegal firearms possession.

22       Deputy Swetavage's affidavit describes a story he reviewed on Davis's suspected
23 Instagram account. *Id.* Deputy Swetavage reviewed the story on July 14, 2021, in which a slide

---

[6] The Court rejects Davis's argument, *see* ECF 70 at 6, that "not 'fucking with' ghost guns indicates lawful firearm use because ghost guns are illegal."

[7] The Court construes Davis's challenges to whether probable cause existed as to particular categories of data contained within the Instagram account as an attack on the warrant's breadth, which the Court discusses below.

1  read: "I got hella shit online hit me I got shit from 900 to 1500 depending what you want." *Id.* at

2  4.

3        Another slide in the story showed a video featuring 13 semiautomatic handguns on a table

4  or floor. *Id.* Based on his training and experience, Deputy Swetavage recognized the firearms as a

5  black Glock full size handgun, a black Glock subcompact handgun, a black .45 caliber Glock

6  handgun, a black .40 caliber Smith & Wesson M&P 40 handgun with a high capacity magazine,

7  two black Smith & Wesson M&P handguns, a black .45 caliber Glock 30 subcompact handgun, a

8  black .40 caliber Glock 27 subcompact handgun, a black .40 caliber Glock 22 handgun, and three

9  black .40 caliber Glock 27 handguns. *Id.* All of the firearms appeared to be real, with the primary

10 components (slide, frame, and barrel) of a semiautomatic handgun, and without blaze orange or

11 pink muzzles. *Id.*

12       Again relying on his training and experience, Deputy Swetavage stated that firearms traded

13 on the black-market command a higher price than legally-purchased firearms. *Id.* Deputy

14 Swetavage estimated the value for a Glock handgun on the black market to be between $1,200 and

15 $1,900, which he considered consistent with the "900 to 1500" posted in the Instagram story he

16 saw. *Id.* Deputy Swetavage also stated that firearms "are sought after items in the criminal world

17 and are often retained for long periods of time" because getting them "can be difficult and is itself,

18 often risky." *Id.* He added that "subjects who traffic firearms tend to be armed because their

19 business deals are often dangerous." *Id.*

20       The sworn facts in Deputy Swetavage's affidavit gave the issuing Judge a substantial basis

21 to conclude that probable cause existed to believe that searching the Instagram account would

22 reveal evidence of illegal firearms possession.[8] The Instagram story Deputy Swetavage reviewed

23 pictured multiple firearms and appeared to advertise them "from 900 to 1500." The practical,

24 commonplace conclusion for the issuing Judge to draw is that a search of the Instagram account on

25

---

[8] The warrant's objective was to seize "evidence that tends to show a felony has been committed, or tends to show that a particular person has committed a felony." ECF 60-5 at 1. With Davis's concession that the warrant is supported by probable cause for suspected illegal firearms possession, even if the warrant lacked probable cause for suspected firearms trafficking, there is no credible argument that the good faith exception would not apply.

7

1  which that story appeared was likely to reveal evidence of the suspected crimes described in
2  Deputy Swetavage's affidavit. This Court is not free to second-guess that sound result.
3        Having found a substantial basis for concluding that probable cause existed to issue State
4  Instagram Search Warrant 3, the Court now turns to Davis's challenges to the Instagram Search
5  Warrants' particularity and breadth.

          2.      <u>Specificity</u>

      "In order for a search to be reasonable, the warrant must be specific." *In re Grand Jury Subpoenas Dated Dec. 10, 1987*, 926 F.2d 847, 856 (9th Cir. 1991) (citation omitted). "The Fourth Amendment's specificity requirement prevents officers from engaging in general, exploratory searches by limiting their discretion and providing specific guidance as to what can and cannot be searched and seized." *United States v. Adjani*, 452 F.3d 1140, 1147 (9th Cir. 2006) (citations omitted).

      There are two aspects to this specificity requirement: "'particularity and breadth . . . . Particularity is the requirement that the warrant must clearly state what is sought. Breadth deals with the requirement that the scope of the warrant be limited by the probable cause on which the warrant is based.'" *United States v. SDI Future Health, Inc.*, 568 F.3d 684, 702 (9th Cir. 2009); (quoting *In re Grand Jury Subpoenas*, 926 F.2d at 856-57).

          *a.*      ***Particularity***

      "[T]he level of detail necessary in a warrant is related to the particular circumstances and the nature of the evidence sought." *Adjani*, 452 F.3d at 1147. To determine whether a warrant is sufficiently particular, courts consider one or more of the following factors: "(1) whether probable cause exists to seize all items of a particular type described in the warrant," "(2) whether the warrant sets out objective standards by which executing officers can differentiate items subject to seizure from those which are not," and "(3) whether the government was able to describe the items more particularly in light of the information available to it at the time the warrant was issued[.]" *United States v. Spilotro*, 800 F.2d 959, 963-64 (9th Cir. 1986) (citations omitted); *see also Adjani*, 452 F.3d at 1148.

Here, Davis's argument that the Instagram Search Warrants lacked particularity fails. Instagram Search Warrant 2 provided for a search of only the Instagram account associated with Davis's suspected username for the dates of August 24, 2020 to October 13, 2020, authorized the government to seize specific enumerated categories of data,[9] in connection with the specific

---

[9] Attachment A states:

> This warrant applies to information and content associated with the Instagram profile with the username 'mr.fuckinwitit69' for the dates of August 24, 2020 to October 13, 2020, that is stored at premises owned, maintained, controlled, or operated by Instagram, LLC, a company that is owned by Facebook, Inc., and headquartered at 1601 Willow Pass Road, Menlo Park, California, 94025.

ECF 60-4 at 2. The scope of the information sought is further narrowed in Attachment B.II, which states, in pertinent part:

> Instagram, LLC is required to disclose the following information to the government for the account listed in Attachment A:
>
> (a) All identity and contact information, including full name, e-mail address, physical address (including city, state, and zip code), date of birth, phone numbers, gender, hometown, occupation, and other personal identifiers;
> (b) All past and current usernames associated with the account;
> (c) The dates and times at which the account and profile were created, and the Internet Protocol("IP") address at the time of sign-up;
> (d) All activity logs including IP logs and other documents showing the IP address, date, and time of each login to the account, as well as any other log file information;
> (e) All information regarding the particular device or devices used to login to or access the account and the date and time of those accesses, including all device identifier information or cookie information;
> (f) All data and information associated with the profile page, including photographs, "bios," and profile backgrounds and themes;
> (g) All communications or other messages sent or received by the account;
> (h) All user content created, uploaded, or shared by the account, including any comments made by the account on photographs or other content;
> (i) All photographs and images in the user gallery for the account;

offenses – violations of 18 U.S.C. § 922(a)(1)(A) (unlicensed firearms dealing) and 18 U.S.C. § 922(g)(1) (felon in possession of a firearm) – described in detail in the accompanying affidavit. *See* ECF 60-4 at 2-6. State Instagram Search Warrant 3 was likewise limited to a discrete timeframe (April 17, 2021 to July 16, 2021), enumerated certain categories of data generated within that three-month period,[10] and set forth particularized facts establishing suspected firearms possession. *See* ECF 60-5 at 1-2, 5. The Ninth Circuit has upheld warrants framed in this narrow manner. *See, e.g.*, *United States v. Flores*, 802 F.3d 1028, 1044 (9th Cir. 2015) (warrant was not overbroad where search was limited to Facebook account associated with defendant's name and email address and authorized seizure was limited to violations of specified crimes); *see also United States v. Kahre*, 737 F.3d 554, 566 (9th Cir. 2013) ("Because the search warrants, read in tandem with the accompanying affidavits, described specific crimes, the searches were not conducted pursuant to an impermissible general warrant."). That result obtains here.

---

(j) All location data associated with the account, including geotags, log files, dates, times, and IP addresses;
(k) All data and information that has been deleted by the user;
(l) A list of all of the people that the user follows on Instagram and all people who are following the user (i.e., the user's "following" list and "followers" list as well as any friends of the user;
(m) A list of all users that the account has "unfollowed" or blocked;
(n) All privacy and account settings;
(o) All records of Instagram searches performed by the account, including all past searches saved by the account;
(p) All information about connections between the account and third-party websites and applications; and,
(q) All records pertaining to communications between Instagram, LLC and any person regarding the user or the user's Instagram account, including contacts with support services, and all records of actions take, including suspensions of the account.

ECF 60-4 at 4-5.

[10] The categories of information specified in State Instagram Search Warrant 3 include contact information for the accountholder, account creation information, log file information, associated contacts, device information, images, photos, and videos, activity logs, communications and messages, linked social media accounts, and Instagram searches performed. ECF 60-5 at 1-2.

10

1    Accordingly, the Court finds that Instagram Search Warrants were sufficiently particular.

### b. Overbreadth

"Breadth deals with the requirement that the scope of the warrant be limited by the probable cause on which the warrant is based.'" *SDI Future Health, Inc.*, 568 F.3d at 702; (quoting *In re Grand Jury Subpoenas*, 926 F.2d at 856-57). "[T]he concept of breadth may be defined as the requirement that there be probable cause to seize the particular thing named in the warrant." *In re Grand Jury Subpoenas*, 926 F.2d at 857.

Davis's argument that the Instagram Search Warrants were overbroad fails. The seizure of the full scope of the data sought, including chat logs, friends and followers lists, "likes," and cookies all go to establish ownership of the Instagram account in question. *See United States v. Sullivan*, No. CR18-5273 BHS, 2019 WL 2022684, at *7 (W.D. Wash. May 7, 2019) (concluding warrant was not overbroad for authorizing seizure of profile account information, login history, email messages and chats, all images and videos, bookmark history, browser history, searches, location history, and content of Google Drive and Google Keep files over a two-month period, where minor victim's mother saw child pornography on suspect's Google Photos account, which was closely integrated with other Google's applications, because the content was likely to contain indicia of ownership over the accounts).

The Court rejects Davis's argument that the government "could have requested only those files that were direct evidence of firearms possession" such as "pictures of firearms or videos depicting firearms." Neither in his briefs, nor during oral argument, did Davis offer any case law in support of that approach, which runs contrary to the binding authority the government cites. *See, e.g.*, *Adjani*, 452 F.3d at 1149-50 ("To require such a pinpointed computer search, restricting the search to an email program or to specific search terms, would likely have failed to cast a sufficiently wide net to capture the evidence sought.").

To the extent Davis challenges the government's wholesale duplication of Instagram account data, without regard to whether information was non-responsive, the warrants lay out appropriate search parameters. Instagram Search Warrant 2 instructed Instagram to "provide the exact duplicate of the accounts and files described in Attachments A and narrowed by Attachment

11

1   B.II." ECF 60-4 at 3. Law enforcement would thereafter review the information received from
2   Instagram to "identify and copy the information contained in those accounts and files that further
3   me[t] the description set forth in Attachment B.III." *Id.* The original duplicate would then be
4   sealed and no further review would occur absent further order of the Court. *Id.* State Instagram
5   Search Warrant 3 likewise provided that "[a]ll information . . . unrelated to the objective of the
6   warrant shall be sealed and . . . not subject to further review, use, or disclosure without a court
7   order." ECF 60-5 at 2.

8       Restricting the permitted search to evidence of the specific crimes under investigation
9   "adequately limits the scope of the search and prevents it from being overbroad." *See United*
10  *States v. Reeves*, 210 F.3d 1041, 1046 (9th Cir. 2000). The parameters set forth in each of the
11  Instagram Search Warrants are therefore sufficient to defeat Davis's argument that the lack of a
12  more specific review protocol renders the Instagram Search Warrants overbroad. *See United*
13  *States v. Bundy*, No. 3:16-CR-00051-BR, 2016 WL 8856696, at *8 (D. Or. Sept. 14, 2016)
14  (warrant was not overbroad where it specified a "two-step search-and-seizure process to ensure
15  nonresponsive information was separated and sealed, and only authorized the seizure of
16  information within the listed accounts associated with [d]efendants").

17      For these reasons, the Court finds that the Instagram Search Warrants were not overbroad.

**C.   Telephone Search Warrants (State Telephone Search Warrant and Federal Telephone Search Warrant)**

20  Davis challenges both Telephone Search Warrants as fruits of the poisonous tree because
21  they relied on the Instagram Search Warrants, which Davis attacks, as discussed above. ECF 59 at
22  39-40. As to the State Telephone Search Warrant, Davis additionally argues that the warrant lacks
23  particularity and is overbroad. *Id.* at 39.

24      The fruits of the poisonous tree argument fails because the Court finds no clear error in the
25  issuance of the Instagram Search Warrants. *See United States v. Wong*, 334 F.3d 831, 839 (9th
26  Cir. 2003) ("Since we have determined that the January 26 warrant is valid, there is no fruit of the
27  poisonous tree issue.").

28

1    Davis's challenges to the particularity and breadth of the State Telephone Search Warrant
2    also fail. The State Telephone Search Warrant sought subscriber records, cell/text/data detail
3    records, cell-site information, stored communications, real-time and historical precision location
4    data, internet access records, cell site lists, carrier key information, and the cell site location
5    information classification for a single target telephone number. ECF 60-6 at 2, 6. In his affidavit
6    in support of the warrant application, Deputy Swetavage stated that based on his review of the data
7    obtained pursuant to State Instagram Search Warrant 3, the target telephone number was linked to
8    the Instagram account in question, which depicted the July 14, 2021 Instagram story discussed
9    above. *Id.* at 4. Deputy Swetavage reiterated the details of the Instagram story in his affidavit and
10   the facts supporting his reasonable belief that Davis was likely in illegal possession of multiple
11   firearms. *Id.* at 5. The warrant also set a time frame for many of the categories of data sought[11]
12   and required that "[a]ll information . . . unrelated to the objective of the warrant" was to be
13   "sealed" and "not subject to further review, use, or disclosure without a court order." ECF 60-6 at
14   5-7. With this level of detail, the State Telephone Search Warrant was adequately specific. *See*
15   *Sullivan*, 2019 WL 2022684, at *7 ("given the vast amount of information stored on modern
16   smartphones, it was reasonable for law enforcement to provide examples of the types of
17   information to be seized, rather than attempting the nearly impossible task of naming each digital
18   location where evidence of child pornography or user attribution was likely to be found").

### D.    The Subject Premises Search Warrant

Davis challenges the Subject Premises Search Warrant on the grounds that it was unsupported by probable cause, insufficiently particular, overbroad,[12] and based on the fruits of earlier illegal searches. ECF 59 at 41-43. These arguments fail.

---

[11] For some of these categories, the warrant specified a relevant time period of July 1, 2021 to July 29, 2021; for real-time location data, the warrant specified a 30-day period beginning July 29, 2021. ECF 60-6 at 2, 6.

[12] The particularity and breadth challenges are directed at the warrant's authorization of the search and seizure of Davis's cell phone. *See* ECF 59 at 42-43.

13

The issuing Magistrate Judge did not clearly err in finding probable cause to issue the Subject Premises Warrant. "[P]robable cause means a 'fair probability' that contraband or evidence is located in a particular place." *United States v. Kelley*, 482 F.3d 1047, 1050 (9th Cir. 2007) (citing *Gates,* 462 U.S. at 246; *Gourde,* 440 F.3d at 1069).

The following sworn facts from Agent Balady's affidavit, as presented to the issuing Magistrate Judge, show a fair probability that evidence was located at the subject premises: ATF task force members learned about Davis, after he openly posted videos of numerous firearms on Instagram. ECF 60-11 at 4. A review of Davis's criminal history showed multiple felony convictions. *Id.* Conversations obtained from Instagram Search Warrant 2 showed Davis was engaged in the possible sale of firearms. *Id.* at 5. Deputy Swetavage's unrelated investigation uncovered additional firearm-related Instagram posts and videos and led to the discovery of the phone number associated with the Instagram account featuring the firearm-related posts and videos. *Id.* at 6-7. GPS data obtained from the State Telephone Search Warrant indicated that the device associated with that phone number was in the vicinity of the subject premises "during mid-day/overnight hours." *Id.* at 8. Location data obtained pursuant to the Federal Telephone Search Warrant also showed that the phone was "consistently located" in the vicinity of the subject premises between the hours of midnight and 6:00 a.m. *Id.* at 9. Davis had also provided the address of the subject premises when he was arrested for a firearms-related offense in Texas on June 5, 2021,[13] and as part of their surveillance, law enforcement observed Davis in the vicinity of the subject premises. *Id.* at 10. A commercial records search of the subject premises indicated that the address was associated with the individual Davis had listed as his girlfriend on his state inmate record. *Id.* at 11. Based on the foregoing, the Magistrate Judge did not err in finding that probable cause to issue the Subject Premises Warrant.

---

[13] The Court rejects Davis's arguments that the information from the inmate record and June 5 arrest was stale, as a gap in time may not undermine the information contained in the warrant where, as here, "'a continuing pattern or other good reasons' suggest that the evidence sought remains in the location to be searched[.]" *See United States v. Grant*, 682 F.3d 827, 835 (9th Cir. 2012) (quoting *United States v. Lacy*, 119 F.3d 742, 745-46 (9th Cir. 1997)).

Davis's particularity and overbreadth arguments directed at the seizure of the cellphone uncovered at the subject premises also lack merit.[14] The warrant included a protocol for searching devices, which is standard in this district. This is sufficient to overcome Davis's challenge to the constitutional specificity of the Subject Premises Warrant. *See Martinez*, 2020 WL 3050767, at *6 (The "Protocol for Searching Devices or Media that Store Data Electronically . . . provid[e] executing officers with sufficient objective standards for segregating responsive material from non-responsive material on Martinez's computers and electronic media.") (internal quotations and citations omitted; modifications in original); *see also Flores*, 802 F.3d at 1044 ("The warrant also established 'Procedures For Electronically Stored Information,' providing executing officers with sufficient 'objective standards' for segregating responsive material from the rest of Flores's account.").

Finally, the Court rejects Davis's fruit of the poisonous tree argument, as the warrants preceding the Subject Premises Warrant were not defective. *See Wong*, 334 F.3d at 839.

### E.  Subject Parcels Warrant 1

Davis challenges Subject Parcels Warrant 1 on that basis that the five days between the time of the seizure of the packages and the issuance of the warrant was unreasonable. ECF 59 at 43. Davis also challenges the Subject Parcels Warrant 1 on the ground that it is based on the fruits of searches conducted pursuant to the other warrants challenged in this motion. *Id.* at 44.

Neither argument is persuasive. As discussed above, the search warrants Davis challenges were valid. There is, therefore, no basis on which to invalidate the Subject Parcels Warrant 1 under the fruit of the poisonous tree doctrine. *See Wong*, 334 F.3d at 839. Nor is there a basis, as discussed below, to invalidate the Subject Parcels Warrant 1 due to unreasonable delay.

"An unreasonable delay between the seizure of a package and obtaining a search warrant may violate the defendant's Fourth Amendment rights. The touchstone is reasonableness."

---

[14] Davis offers no authority for his related argument that the officer executing the Subject Premises Warrant failed to file a return listing the materials seized from the cell phone at issue. The Court has not considered this unsupported argument. *See McCarthy v. F.D.I.C.*, 348 F.3d 1075, 1081 (9th Cir. 2003) (declining to consider undeveloped argument).

15

*United States v. Sullivan*, 797 F.3d 623, 633 (9th Cir. 2015) (citation omitted).  "[E]ven if the initial seizure of a mailed package is valid, a continued detention could at some point become an unreasonable seizure within the meaning of the Fourth Amendment."  *United States v. Aldaz*, 921 F.2d 227, 229 (9th Cir. 1990) (citing *United States v. Van Leeuwen*, 397 U.S. 249, 252 (1970)).

Here, the government seized the two packages at issue on Wednesday, December 22, 2021, the same day they were discovered.  ECF 66 ¶ 5.  On that day, the investigating ATF agent began drafting an affidavit in support of a search warrant application for the two packages.  *Id.* ¶ 7.  On the next day, Thursday, December 23, 2021, at approximately 1:00 p.m., the government submitted the application to the duty Magistrate Judge.  *Id.*  The Magistrate Judge issued the warrant on Monday, December 27, 2021.  ECF 60-13.

On these facts, the delay of five days[15] between the seizure of the packages and the issuance of the warrant was reasonable.  *See United States v. Gill*, 280 F.3d 923, 929 (9th Cir. 2002) (finding that the six days between the seizure of the package and the issuance of the warrant was reasonable where: the package was mailed shortly before 6:00 p.m. on a Thursday and seized the same day; investigators worked to track down multiple leads, confirm motor vehicle, utility, and criminal records, verify addresses and phone numbers, and contact the postal worker who delivered mail to the address indicated on the package; thereafter, an officer submitted a search warrant application and affidavit on the Tuesday after the package's seizure; and because the Magistrate Judge was unavailable on that day, the warrant did not issue until the following morning).  The government acted promptly in seizing the packages, doing so on the same day they were discovered.  The government likewise acted promptly in submitting a search warrant application on December 23, 2021 – the day after seizing the subject packages and before the

---

[15] In reply, Davis states that "the total delay was longer than initially understood," arguing for the first time that the delay was six, not five, days because the packages were shipped on December 21, 2021.  ECF 70 at 1.  This is different from the argument presented in the opening brief: "The time between seizure of the package and obtaining the warrant was five days, which was unreasonable under the totality of the circumstances."  ECF 59 at 43.  While the Court does not consider the repacking of this argument presented on reply, *see Bazuaye*, 79 F.3d at 120, the additional day does not alter the reasonableness analysis set forth above.

16

1  Court would close for the federal Christmas holiday.  The Court rejects Davis's argument that the
2  government took too long because it needed "a full day"[16] to draft, revise, and finalize a
3  straightforward search warrant application that "copied and pasted from previous warrants."  *See*
4  *United States v. Ames*, 106 F.3d 409, at *1 (9th Cir. 1997) ("A Monday mid-day application for a
5  search warrant based on late Friday afternoon probable cause was adequately fast.") (citing *United*
6  *States v. Lux*, 905 F.2d 1369, 1382 (10th Cir. 1990)) (table decision).  Here, the government acted
7  with reasonable diligence in preparing the search warrant application.  The day's time attributable
8  to the preparation and submission of that application was reasonable.

9        The issuance of the warrant by the duty Magistrate Judge on the first full business day after
10 the holiday was also prompt.  *See Gill*, 280 F.3d at 929.  While Davis argues that the government
11 has not presented evidence of why a Magistrate Judge was unavailable to sign the search warrant
12 application before the first business day after Christmas, he concedes that the Friday after the
13 government submitted the search warrant application was a holiday.  *See* ECF 70 at 4 n.1
14 ("Typically, Christmas Eve is not a federal holiday.  However, in 2021, because Christmas,
15 December 25th, fell on a Saturday, the federal holiday for Christmas was observed on Friday,
16 December 24, 2021.").  To the extent Davis argues the duty Magistrate Judge should have acted
17 sooner, the fact that the Christmas holiday delayed review of that search warrant application is
18 outside the government's control.  *See Aldaz*, 921 F.2d at 231 (a six-day delay was reasonable
19 where "[m]ost of the delay stemmed from the conceded difficulty of traveling in interior Alaska,
20 which is beyond the government's control."); *see also United States v. Williams*, 349 F. Supp. 3d
21 1007, 1018 (D. Haw. 2018) (a six-day delay was reasonable where additional time was necessary
22 to transport the subject package due to logistical challenges in Hawaii and "[l]aw enforcement's
23 diligent work included a weekend and a Monday Hawaii State Holiday.").  Davis offers no
24 authority to the contrary.

---

[16] Davis describes a different timeframe in his opening brief.  There, he argues that the "drafting of the warrant should not have taken five days."  ECF 59 at 43.  That timeframe is not consistent with the record.  As set forth above, the packages were seized on December 22, 2021, and the search warrant application followed the next day.

17

Overall, the five-day delay between the seizure of the subject packages and the issuance of Subject Parcels Search Warrant 1 was reasonable. There is no need for an evidentiary hearing on any issues concerning this warrant, as the five-day delay would be reasonable notwithstanding the facts Davis claims are in dispute, i.e., when the warrant was delivered to the Magistrate Judge, whether the Magistrate Judge was unavailable, or whether December 24 was a federal holiday that year. Accordingly, Davis's challenges to Subject Parcels Search Warrant 1 fail.

## IV. CONCLUSION

For the reasons set forth above, the motion to suppress is **DENIED**.

**IT IS SO ORDERED.**

Dated: April 10, 2024

**ARACELI MARTÍNEZ-OLGUÍN**
**United States District Judge**